The last case on the afternoon docket is No. 5-18-0511, People v. Walker. Arguing for the appellant, Terrell Walker, is Gilbert Lenz. Arguing for the appellate, People of the State of Illinois, is Max Miller. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device. When time has expired, I'll bang the gavel. Please remember, only the clerk of the court is permitted to record these proceedings. Gilbert Lenz Okay. You gentlemen ready? Proceed? Terrell Walker Yes, Your Honor. Gilbert Lenz You may proceed. Gilbert Lenz Thank you, Your Honor. My name is Gilbert Lenz and I'm from the Office of the State Appellate Defender, and I'm here on behalf of Terrell Walker. Your Honors, the question before the jury in this case was whether Mr. Walker had a prior felony conviction. Due to the nature of that charge and the nature of the police investigation in this case, the parties thoroughly litigated and the court carefully vetted the evidence of Mr. Walker's prior criminal history that would be admitted and ruled that his prior felony conviction could come in to prove the charge, that he could be impeached with two prior drug convictions if he chose to testify. And in order to explain the police presence, the jury would be allowed to hear that there was an open warrant for him on the date of his arrest. I want to emphasize here that even if that was all the jury heard about Mr. Walker's prior history, he would be here today asking for a new trial because the jury was never informed of the limited purpose behind this evidence. They were allowed to consider it as propensity evidence, which was already improper, but the jury heard much more. Counsel did not offer that instruction? No, counsel never offered that instruction and the court did not give it. So the error is already apparent even if we only consider the properly admitted other crimes evidence, but this jury heard much more than that. The jury heard from all three officers that they prior to this investigation. They heard not evidence of a single warrant, but evidence that Walker had multiple warrants on the date of his arrest. And the jury saw twice during trial Mr. Walker's mugshot and improperly had that mugshot during deliberations. And then of course, again, the jury was never instructed on any limitation to this highly improper evidence, but the jury was never instructed to consider it as propensity evidence. So whether as a matter of plain error or ineffective assistance, Mr. Walker should get a new trial in this otherwise closely balanced case. And I'd like to address each of the alleged errors briefly and then the nature of the closely balanced evidence. Your honors, the only evidence of police familiarity that was properly admitted here was again, a reference to an active warrant in order to explain to the jury why the police were looking for Mr. Walker, but the state went well beyond this in this case. Each testifying officer, the prosecutor asked each testifying officer if he knew Mr. Walker prior to the date of his arrest. And two of those, the two detectives, the prosecutor asked if they prejudicially before the jury that these officers were familiar with Walker prior to this current investigation. And despite the prosecutor's promise that he would try to limit the investigation evidence to the presence of a warrant, a single warrant, the prosecutor then in his opening statement told the jury that Mr. Walker had quote outstanding warrants, plural on the of his arrest. He then asked all three officers whether there was a warrant for Mr. Walker instead of just one, which would have sufficed to explain the investigation. And Sergeant Williams then volunteered that Walker had quote some warrants, plural on the date of his arrest. And perhaps most improperly and prejudicially here, the prosecutor then cross And it's axiomatic that a witness cannot be impeached with evidence of a warrant or a mere arrest. And I would know the state does not dispute that that cross examination was error here. The final evidentiary error here was concerning the mugshot, which as you've seen from the record was a photograph of Mr. Walker standing against a wall with horizontal lines. The state's not disputing that that was the mugshot. And the jury saw that twice during trial and had that improperly and irrelevantly during deliberations. So that was an additional error here. So on top of all those evidentiary errors, then, as I said, the clearest error here was that whether whether we look at just the improper other crimes evidence or the improper other extremely important limiting instruction to to tell the jury that they were not free to consider this as evidence of propensity to commit crime. So whether as a matter of plain air ineffective assistance. A new trial is required here because one or more errors certainly occurred. And this case presented the jury with closely balanced evidence in what falls under the what the Illinois Supreme Court is has called for decades now a credibility contest that is by definition closely balanced. Why was it closely balanced counsel? For the state argues that it was overwhelming and not not closely balanced. Right, that and that that is the state's key response in this court. And I would say, you know, the state points to evidence of guilt and the state had evidence of guilt. But what the jury was presented with here is what the Illinois Supreme Court has called in repeatedly a closely balanced case because the jury was tasked with on the one side weighing the credibility of the state's witnesses and the state's other circumstantial evidence with on the other side, the credibility of Mr. Walker. And in his testimony, Mr. Walker addressed each aspect of the state's case denied it or or or rejected it. And then it was up to the jury to decide whether they believe Mr. Walker or the state's witnesses. So under Naylor and savvy and many cases from the Illinois Supreme Court. This is the classic credibility contest that meets the definition of closely balanced evidence for prejudice purposes. And again, it's either as plain error or an effectiveness here for counsel's failure to object to any of this or to request the instruction. So for all those reasons, Your Honor, Mr. Walker asked that you grant him a new trial and I'd be happy to answer your questions or save time for rebuttal. Any questions? No other questions. Okay, Mr. Miller. Thank you, Mr. Lentz. May it please the court, counsel. My name is Max Miller and I represent the people of the state of Illinois. The defendant concedes he failed to properly preserve the issues of the prosecutor's comments, use of testimony or the lack of a jury instruction for review and the issues have been forfeited. However, the state and the defendant agree this court may consider the issue under the first prong of plain error provided that the defendant shows that both a balanced, the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error. The initial step under plain error is obviously to first then determine whether a clear or obvious error occurred at trial. Here the state maintains that these instances were either not error in and of themselves or that the evidence so overwhelmingly favored the state that the defendant cannot satisfy the first prong of plain error or the ineffective assistance of counsel test to showing prejudice. The first allegation of improper evidence regards police testimony that the officers recognize the defendant prior to his current crime. Now our Supreme Court has held in People v. Bryant, although the prosecutor does not argue the officer's prior acquaintance with the defendant is evidence of criminal history, the implication could be conveyed by testimony of and for that reason it's better avoided unless somehow relevant. Relevant evidence being any evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without. Here is the state emphasized during its opening and closing arguments, it was attempting to establish that the defendant had exercise and control over the weapons as he was the one using the apartment to the exclusion of anyone else, that being a necessary element of the offense. It's relevant in proving this because there's a dispute about the identity of the defendant because the evidence demonstrated he was managing at the very least his residential affairs under the name of Bruce Outlaw. Therefore it was necessary on the state, on the part of the state to establish that the police officers were not confused about the identity of the defendant despite the obvious contradiction and defendant living in and paying for an apartment under the name of Bruce Outlaw. Now the defendant argues that he's not disputing he was the person the officer saw leaving the apartment and arrested minutes later, but this is not the only possible confusion of identity in this case. The state was attempting to prove... Why were so many witnesses needed to give the identity information? Your Honor, I would say that just I think simply it was in order to reinforce the credibility that this was in fact the defendant and not Bruce Outlaw because that was such a significant issue and dispute as to who was actually exercising control of this apartment. And I think in the trial strategy of the defendant below in the case below you see that their attempts to challenge the credibility of both the apartment complex owner's identification that this was a central issue that the jury be clear that we're talking about documentation that concerns Bruce Outlaw but is meaning the defendant and that for the sake of clarifying that confusion it was necessary for the state to bring this out. What about the mugshot? Yes, Your Honor. So regarding the mugshot, so in People v. Irwin, the First District said that introducing a defendant's photograph even when taken at a police station is not inherently prejudicial. The reason mugshots are generally excluded from evidence is because they imply the defendant had been previously arrested. Generally, however, again evidence is admissible if it's existence more or less probable as long as its probative value is substantially outweighs the danger of unfair prejudice. Now the Irwin Court also said photos were irrelevant to any if photos were irrelevant to any issue the jury was called upon to decide, they're improperly admitted. But the photo defendant here is far more probative than prejudicial. The photograph was first used to allow Detective Pingel to substantiate that it was his means of identifying the defendant to the owner of the apartment complex. Based on her response that he received from her, he was able to request permission to use an apartment to observe the defendant. Next, the photograph was shown to Smith enabling her to testify that the person in the photograph was the person she identified as Bruce Outlaw and who was in reality the defendant. Again, the defendant argues in its brief and now here that the identity that the defendant was the man arrested was not in dispute. But the fact that the defendant was seen by the detective being undisputed does nothing to address the purpose of the admission of the evidence, which is the defendant was exercising control of the firearms of being the sole resident of the apartment listed under the name of Bruce Outlaw. And the state was required to prove the defendant's identity to the department. And as such, it was necessary to inform the jury of the defendant's identity and the misleading nature about the identity of the defendant. Does that answer your honor's question? Well, that's probably as good as you can. Sure. It's your honor. So I'd like to move on to the reference to the warrants. The defendant argues the state referencing other warrants that the court was never informed. Here, I would just like to say that as the way to the evidence, which I'll argue next, that this clearly was this does not seem to be deliberate in this statement. When the testimony was brought out, the first time was through the direct testimony of the detective, not an opening statement, not counting as evidence that police officer testified in the singular regarding to a warrant. And any misstatement regarding multiple warrants, the state does not believe to be any more than de minimis error because the defendant had a warrant out for his arrest was information the trial court had already ruled the jury could consider. And just briefly touching on the IPI criminal number 3.14 jury instruction, the fourth district has held that the failure to give that instruction in and of itself is not plain air. It can lessen the impact of improperly admitted evidence. But as the state will argue, the overall weight of the evidence here is such that there was no prejudice there as it was. And the way to the evidence that I keep referencing, first, we have the testimony of Bruce Outlaw, who testifies he knew the defendant, he signed a lease for an apartment for the defendant, gave the keys to the defendant, and did not move any of his own property into the apartment and had no need of it. Detective Pingel testified he could identify the defendant. The defendant had a warrant for his arrest, which prompted their search form. He conducted surveillance of the apartment at B10, the same apartment Outlaw testified he acquired for the defendant. He personally saw the defendant leave and reenter the apartment without knocking. He testified he was involved in the search of the rifle, handgun, live rounds of ammunition, both for the handgun and the rifle. And Pingel testified that he also recovered from the apartment belongings of the defendant, such as a traffic citation issued to the defendant under his own name, as well as a form from the defendant's vehicle being towed, and a 2016 W-2 statement for the defendant, and a college ID from John A. Testimony. He testified to the same fact the defendant simply entered the apartment at will, that he was involved in the execution of the search warrant, he was responsible for maintaining custody of the evidence, that he entered the mauled evidence lockers, tagging and initialing them. Sergeant Anthony Williams testified he was in an unmarked car following the defendant after he left the apartment B10, he was seen leaving, and proceeded to place him under arrest once the defendant had stopped. Williams testified that on the back seat of the defendant's car was a copy of an envelope addressed to Bruce Outlaw at apartment B10, a document entitled landlord's five-day notice, signed by Amelia Smith, the owner of the apartment complex, or manager rather, and a rent notice indicating an unpaid balance. Finally, we have the testimony of Amelia Smith herself, manager of the apartment. She testified that Bruce Outlaw was the individual who came in to rent the apartment. I say Bruce Outlaw in quotes because it was actually the defendant. Smith testified and made an in-court identification of the defendant as the man she believed to be Bruce Outlaw. Smith testified the defendant had made a $400 rental payment to her, she delivered him the notice of the remaining balance to be paid, and she testified that she and the head of maintenance went down to the apartment to ensure that it was secured before the police were able to search. Now in opposition to all of this, the defendant testifies on his own behalf that he was actually at a different, the apartment complex, a different apartment, tending to an amputee friend staying in room C15. Defendant testified he stayed the night at this apartment before, but Bruce Outlaw lived and stayed there. The defendant claimed that Bruce Outlaw didn't stay there all the time, he used the apartment for a gaming system, and the defendant testified that he would occasionally go over there and play an Xbox and he had no knowledge of the to believe that Outlaw and Smith were lying, but that they falsely identified him. And may I briefly conclude? Briefly, yes. For the foregoing reasons of people, we respectfully request this court affirm the judgment below. Thank you. Thank you, Mr. Miller. Thank you, Your Honor. Mr. Lenz? Yes, briefly, Your Honors, I'll go in reverse order. First on the prejudice, the state's recitation of its trial evidence or the trial evidence does not mean that the evidence was not closely balanced for prejudice-pronged purposes under plain error or ineffective assistance. Mr. Walker testified and answered in his testimony to every single fact that the state had against him, and the question for the jury was whether Walker was credible or not. And when that is the question before the jury, the Illinois Supreme Court has held for decades that no error of prejudicial other crimes evidence can be allowed to interfere with the jury's determination. And we know the jury itself considered the case close. They deliberated for four hours. They actually announced that they were deadlocked. They got the prim instruction and deliberated another almost an hour. So the jury itself indicated that this was a close case and as does the nature of the evidence. As to a couple of the alleged errors that were discussed, this speaks to both the fact that the officers testified they knew Mr. Walker and to the mugshot, which we know was from a prior case, not from this case, which makes it even more prejudicial. It's evidence of prior criminal conduct, and the jury had that. How do we know that? Was it introduced that way? It was introduced as the photograph that the detective showed Amelia Smith in order to determine the identity of the man. Did they, at that time, did they know the date on when that was taken or that it was a prior violation? How was it presented? It was presented as the photograph, merely as the photograph that the detective showed Miss Smith, but given the nature of photograph and given its source, the police department, the jury was free to infer and would reasonably infer, given the looks of the photograph, that it was a mugshot. And we know that they had that photograph before this current arrest. So it's evidence of prior criminal conduct. And the key here in response to the state is that certainly the identity of the person living in apartment B10 was at issue, but the officers knowledge and familiarity with that person prior to the date of arrest was not relevant because they never saw the person living in that apartment. Their familiarity with Walker prior to trial was carefully limited to the existence of an open warrant, singular, and then the door busted open during trial and all this other alleged and all the other alleged other crimes evidence that we're saying was improper came in. So certainly identity was an issue, but that had to be based on Smith's and outlaw's testimony and the circumstantial evidence that the officers certainly should not have been allowed to testify that they knew Mr. Walker prior to this date. And finally, your honors, on the instructional error, the state said, you know, failure to give IPI 3.14. And I would just point this court to the two cases from this very court that are cited in our brief where this court found that failure to give IPI 3.14, a failure of trial counsel to request that very important instruction required a new trial. That's the Briones and the Campbell cases. So your honors, for all those reasons, Mr. Walker respectfully requests that he be granted a new trial. And I'd be happy to use the rest of my time to answer any questions you have. Any questions? No other questions. Okay, gentlemen, thank you for your arguments this afternoon. The matter will be taken under advisement and we'll issue an order soon. Thank you. Thank you.